# UNITED STATES DISTRICT COURT
## for the

## Northern District of New York

## Civil Division

---

**BETH A. LOCKHART,**

       **Plaintiff,**

  **v.**               **Case No.** 5:25-CV-0321 (ECC/ML)
                  _____

                **Jury Trial:  YES**

**COUNTY OF ONONDAGA, J. RYAN
McMAHON II, County Executive, in his
individual and official capacity; BRIAN
DONNELLY, Deputy County Executive,
in his individual and official capacity;
ONONDAGA COUNTY SHERIFF'S
OFFICE; TOBIAS SHELLEY, as Sheriff,
in his individual and official capacity;
JEFFREY PASSINO, as Undersheriff, in
his individual and official capacity; LISA
DELL, as Chief Civil Deputy, in her
individual and official capacity; COLLEEN
ALEXANDER, an Onondaga County Sheriff
Deputy, in her individual and official capacity;
And JANE AND/OR JOHN DOE(S);**

        **Defendants.**

---

   Plaintiff, Beth A. Lockhart, by and through her attorney, Frank Policelli, Esq., as and for

her Complaint against Defendants, County of Onondaga, State of New York, Onondaga County,

J. Ryan McMahon II; Brian Donnelly; Onondaga County Sheriff's Office; Tobias Shelley; Jeffrey

Passino; Lisa Dell; Colleen Alexander; and Jane Doe(s) and John Doe(s), alleges as follows:

1.      The name and post-office residential address of the Plaintiff is Beth A. Lockhart, a natural

person and at all times relevant hereto, a resident of Oswego County, residing at 1790 County

Route 1, Oswego, New York 13126.

2.      The Defendants are as follows:

a.      COUNTY OF ONONDAGA, located at 421 Montgomery Street, Syracuse, New

York 13202; telephone number: 315-435-3516, unknown e-mail address. A municipal corporation

duly organized and existing under the laws of the State of New York, County of Onondaga.

b.      J. RYAN McMAHON II, County Executive, in his individual and official capacity,

located at 421 Montgomery Street, Syracuse, New York 13202; telephone number (315) 435-3516,

unknown e-mail address; home address: 6496 Marra Lane, Cicero, New York 13039. At all times

relevant hereto he was the duly elected County Executive for the County of Onondaga. Upon

information and belief, Defendant McMAHON II, personally participated in the unconstitutional

and unlawful acts alleged herein. Further, upon information and belief, at all times relevant hereto,

Defendant McMAHON II, had authority and control over the other named individual Defendants

and is responsible for, among other things, the policies, training, supervision, discipline and

conduct of the other named Defendants. He is also responsible, by law, for enforcing the rules and

regulations of the State of New York and County of Onondaga and for insuring that employees of

the "Onondaga County Sheriff's Office" obey the laws of the State of New York and the United

States.

c.      BRIAN DONNELLY, Deputy County Executive, in his individual and official

capacity; 401 Montgomery Street, Syracuse, New York, 13202; telephone number: (315) 435-

2070. At all times relevant hereto he was the duly appointed Deputy County Executive for the County of Onondaga. Upon information and belief, Defendant DONNELLY, personally participated in the unconstitutional and unlawful acts alleged herein. Further, upon information and belief, at all times relevant hereto, Defendant DONNELLY, had authority and control over the other named individual Defendants and is responsible for, among other things, the policies, training, supervision, discipline and conduct of the other named Defendants. He is also responsible, by law, for enforcing the rules and regulations of the State of New York and County of Onondaga and for insuring that employees of the "Onondaga County Sheriff's Office" obey the laws of the State of New York and the United States.

      d.     ONONDAGA COUNTY SHERIFF'S OFFICE, located at 407 S State Street, Syracuse, New York 13202; telephone number: 315-435-2111. A municipal corporation duly organized and existing under the laws of the State of New York, County of Onondaga, serving Onondaga County. This Defendant further remains in possession of the Defendants property.

      e.     TOBIAS SHELLEY, as Sheriff, in his individual and official capacity; located at 407 South State Street, Syracuse, New York 13202; telephone number: 315-435-3044; unknown e-mail address; home address: 3798 Oak Hill Road, Marietta, New York 13110-9740. Upon information and belief, Defendant SHELLEY, personally participated in the unconstitutional and unlawful acts alleged herein. Further, upon information and belief, at all times relevant hereto, Defendant SHELLEY, had authority and control over the other named individual Defendants and is responsible for, among other things, the policies, training, supervision, discipline and conduct of the other named Defendants. He is also responsible, by law, for enforcing the rules and regulations of the State of New York and County of Onondaga and for insuring that employees of

the "Onondaga County Sheriff's Office" obey the laws of the State of New York and the United States.

f.    JEFFREY PASSINO, as Undersheriff, in his individual and official capacity; located at 407 South State Street, Syracuse, New York 13202; telephone number: 315-435-3044; unknown e-mail address; home address: 9087 Oneida River Park Drive, Clay, New York 13041. Upon information and belief, Defendant PASSINO, personally participated in the unconstitutional and unlawful acts alleged herein. Further, upon information and belief, at all times relevant hereto, Defendant PASSINO, had authority and control over the other named individual Defendants and is responsible for, among other things, the policies, training, supervision, discipline and conduct of the other named Defendants. He is also responsible, by law, for enforcing the rules and regulations of the State of New York and County of Onondaga and for insuring that employees of the "Onondaga County Sheriff's Office" obey the laws of the State of New York and the United States.

g.    LISA DELL, as Chief Civil Deputy, in her individual and official capacity; located at 407 South State Street, Syracuse, New York 13202; telephone number: (315) 435-3060; unknown e-mail address; home address: 3233 Holly Ridge, Baldwinsville, New York 13027. Upon information and belief, Defendant DELL, personally participated in the unconstitutional and unlawful acts alleged herein. Further, upon information and belief, at all times relevant hereto, Defendant DELL, had authority and control over the other named individual Defendants, more particularly was the direct supervisor of Defendant ALEXANDER and is responsible for, among other things, training, supervision, discipline and conduct of the other named Defendants. She is also responsible, by law, for enforcing the rules and regulations of the State of New York and

–4–

County of Onondaga and for insuring that employees of the "Onondaga County Sheriff's Office" obey the laws of the State of New York and the United States.

      h.     COLLEEN ALEXANDER, an Onondaga County Sheriff Deputy, in her individual and official capacity; located at 407 South State Street, Syracuse, New York 13202; telephone number: (315) 435-3060; unknown e-mail address; home address: 1358 Ridge Road, Fabius, New York 13063-8711. Defendant ALEXANDER is employed by the County of Oneida and assigned to work in the "Onondaga County Sheriff's Office" under the supervision of Defendants DELL, SHELLEY AND PASSINO, and was specifically acting as a Deputy for that Agency when she engaged of the acts complained of here. Defendant ALEXANDER personally participated in the unconstitutional and unlawful acts alleged herein as she was responsible for, among other things, violating the Plaintiff's rights as outlined herein and causing injury and harm to the Plaintiff as outlined herein.

      i.     JANE and JOHN DOE(S), Onondaga County Sheriff's Deputy, who may later be identified, in his/her individual and official capacities; located at 407 South State Street, Syracuse, New York 13202; telephone number: (315) 435-3044; unknown e-mail addresses. Defendants JANE AND JOHN DOE(S) are employed by the County of Oneida and assigned to work in the "Onondaga County Sheriff's Office" under the supervision of Defendants DELL, SHELLEY AND PASSINO, and was specifically acting as a Deputy for that Agency when he or she engaged of the acts complained of here and acted in concert with Defendant ALEXANDER who personally participated in the unconstitutional and unlawful acts alleged herein as she was responsible for, among other things, violating the Plaintiff's rights as outlined herein and causing injury and harm to the Plaintiff as outlined herein.

## INTRODUCTION:

3.      This is a Complaint under the United States Constitution, the State of New York

Constitution and the laws of the State of New York to remedy violations of the rights of the

Plaintiff, Beth A. Lockhart, a non-exhaustive list of proposed causes of action for which Plaintiff

will bring suit against some and/or all of the Defendants' named herein include the following: N.Y.

Const., Art. I, Sec. 1 relating to rights and privileges; N.Y. Const., Art. I, Sec. 6 relating to due

process and protections of enumerated rights; N.Y. Const., Art. I, Sec. 8 relating to freedom of

speech; N.Y. Const., Art. I, Sec. 11 relating to equal protection; N.Y. Const., Art. I, Sec. 12 relating

to Security Against Unreasonable Searches, Seizures and Interceptions; N.Y. Civil Rights Law,

Art. II, § 4 relating right to keep and bear arms that cannot be infringed upon; N.Y. Civil Rights

Law, Art. II, § 8 relating to rights of search and seizure; Abuse of Process; Negligence; Gross

Negligence; Defamation; Interference with existing property rights; Interference with existing and

prospective contractual relations; Intentional, Reckless and/or Negligent and/or Grossly Negligent

Infliction of Severe Emotional Distress; Unlawful imprisonment; Defamation including both Libel

and Slander; Prima Facie Tort; Conspiracy; Trespass on real property; and Federal causes of action

under both 42 USC § 1981 and § 1983.

## JURISDICTION AND VENUE:

4.      This action is brought, in part, pursuant to 42 U.S.C. § 1983 for violations of the Plaintiff's

First and Fourteenth Amendment rights under the United States Constitution. This action is also

brought pursuant to the laws of the State of New York. This action is for monetary damages as

well as declaratory, injunctive, punitive and equitable relief.

5.      Jurisdiction is conferred upon this Court pursuant to the Constitution and laws of the State

of New York and the United States.

6.      Venue is proper in Onondaga and/or Oswego County pursuant to the provisions of N.Y. CPLR §§ 503(a) and 504.

### CONDITIONS PRECEDENT:

7.      On or about March 8, 2024, through March 13, 2024, a verified Notice of Claim was served upon all Defendant's named herein; no N.Y. Gen. Mun. Law § 50-h hearing ("§ 50-h hearing") was demanded or held and at least thirty (30) days have lapsed since the service of the Notice of Claims were served upon Defendants; moreover, the acts and/or actions by Defendant's complained of are still continuing and ongoing as outlined herein.

### FACTS:

8.      Commencing on or about December 4, 2023 and continuing through the date of the filing of this case these Defendants, acting individually and acting in concert with two or more named Defendants and/or two or more JANE DOES AND/OR JOHN DOES that have yet to be identified, established a plan by which to act unlawfully against the Plaintiff; and such plan led to harm and injury to the Plaintiff causing Plaintiff damages. These actions have continued through the present date causing Plaintiff to sustain additional harm and damages which are ongoing, and these damages continue to accrue and will continue to accrue here.

9.      Commencing on or about December 4, 2023 and continuing through at least December 6, 2023, without notice to Plaintiff and without a legal or lawful basis for doing so, the Defendants working together and individually began privately reviewing all of Plaintiff's private personal confidential information including, but not limited to, licenses, registrations, addresses, telephone numbers, locations of properties and possessions, date of birth, RAP sheets, pistol permit records

and all applications for the same; as well as any and all prior orders of protection issued either in favor of and/or against Plaintiff and utilized that information for an unlawful purpose and/or alternatively a purpose other than a purpose supported by departmental policies and procedures relating to this information causing injury to the Plaintiff.

10.    Such information obtained by Defendants in the manner set forth herein was utilized in furtherance of a plan or purpose to cause Plaintiff harm and injury and did in fact do so, which resulted in the Plaintiff suffering damages. Defendants acted together and individually in furtherance of this Agreement to cause such harm and injury to the Plaintiff and have continued to do so even as of the date of this notice of claim. This information was further provided to and shared with media outlets as well as with persons not authorized to receive and/or review such information causing harm to the Plaintiff Plaintiff's damages have continued to accrue and will continue to accrue until such time as the information is retrieved and sealed. At no time during any of these overt and/or covert actions did Plaintiff have any pending criminal charges, nor had Plaintiff been arrested by any agency, nor had Plaintiff had any orders of protection issued against her, nor had Plaintiff been convicted of any crimes. Defendants further provided that information to third parties outside of their employment and such information was subsequently utilized to cause harm and injury to the Plaintiff by those who received such information from Defendants.

11.    The aforementioned information pertaining to the Plaintiff obtained from these actions by the Defendants set forth herein was subsequently utilized for an unlawful purpose and in fact Defendants shared and distributed that information with agencies, civilians, Jane and John Does outside of their employ and various media sources as well as to persons outside the Defendants employ to cause Plaintiff additional harm and injuries and caused Plaintiff to sustain significant

injury, damages and harm with no legitimate purpose for doing so other than in furtherance of causing Plaintiff harm, injuries and damages and this information is still being circulated by Defendants herein resulting in ongoing harm, injuries and damages.

12.    Upon information and belief, on or about December 5, 2023, Defendants, Onondaga County Sheriff's Office and its various employees as set forth herein, commenced making *ex parte* applications to the Onondaga County Court requesting the suspension and/or revocation of Plaintiff's pistol permit and seeking to take the Plaintiff's pistols and any other firearms possessed by Plaintiff from Plaintiff's possession with no legitimate and/or legal basis for doing so. This was done both individually and with the Defendants acting in concert with third party Jane and John Does who have yet to be identified. Upon information and belief, Defendants Sheriff's as set forth herein knew, or had reason to know, that the basis of their *ex parte* application was not sufficient to seek the relief they were requesting from the Court and proceeded against Plaintiff anyways disregarding the Plaintiff's constitutional, statutory and common law rights as well as in violation of departmental policies and procedures. Upon information and belief, Defendants acting in concert with Jane and John Does, third parties yet to be identified, Defendants herein engaged in forum shopping in furtherance of their plan to harm and injure Plaintiff and in doing so did in fact cause Plaintiff harm and injury as well as damages. Upon information and belief, Defendants misrepresented to the County Court a threat by Plaintiff in order to obtain the requested *ex parte* relief to cause such harm and injury to Plaintiff. Upon information and belief, Defendants misrepresented to the County Court that an arrest of Plaintiff was imminent to obtain this immediate *ex parte* relief, which was false. Upon information and belief the Defendants further led the Onondaga County Court to believe that an Extreme Risk Protection Order had been granted

against Plaintiff, when it had not yet been   applied for or granted as of the date of Defendant's application to obtain this immediate *ex parte* relief and Defendants knew or had reason to know it had been previously rejected.

13.    Defendants knew, or had reason to know, that they lacked any legitimate basis for this *ex parte* application at the time these applications were made by Defendants to the Onondaga County Court but did so individually and/or   acting in concert with various third parties, Jane and John Does not yet identified here; and such actions caused the Plaintiff harm and injuries and caused Plaintiff to sustain significant damages.

14.    Defendants knew, or had reason to know, that their actions as set forth herein violated State and Federal laws and the Federal and State Constitutions as set forth herein and did so in disregard of the same with the intent to cause the Plaintiff harm and injuries and did in fact cause the Plaintiff to sustain such harm and injury resulting in significant damages, which again are continuing and ongoing even as of the date this Claim is being served.

15.    The Defendants have never at any time since December 5, 2023, every supplied Complainant with copies of either of the *ex parte* applications they filed in Court seeking this Order, even though requests have been made by Plaintiff via her legal counsel for photocopies of the same. This denial of access to these various *ex parte* applications filed by Defendants set forth herein has injured the Plaintiff and continues to injure the Plaintiff causing damages as set forth herein. This has also denied Plaintiff due process of law, denied Plaintiff equal protections under the law and also denied Plaintiff of her property and contract rights, as well as Plaintiff's constitutional rights to bear arms as set forth herein.

16.    After engaging in the foregoing conduct, acts and actions as set forth herein the Defendants

were subsequently able to obtain an *ex parte* order which was entered by the Hon. Theodore Limpert on December 5, 2023, that unlawfully suspended the Plaintiff's Pistol License No. 0C105104 issued to Beth A. Lockhart on June 17, 2022, as set forth herein under false pretenses while acting in concert with third parties. Such actions by Defendantscaused Plaintiff harm and injury resulting in damages and deprivation of Plaintiff's constitutional, statutory and common law rights as set forth herein and have placed Plaintiff, Plaintiff's business and Plaintiff's family in imminent risk of harm or death unlawfully as set forth herein.

17.    On or about the morning of December 6, 2023, certain Defendants including, but not limited to, Defendant Onondaga County Sheriff's Office; Defendants Shelley, Passino, Dell and Alexander as well as Defendant Jane Doe #1 (an Onondaga County Sheriff Deputy) acting in concert together began seeking out Plaintiff personally. Defendants Alexander and Defendant Jane Doe #1 arrived at 10:42 a.m. in two unmarked Defendant Onondaga County Sheriff's Office Vehicles at Plaintiff's business Lockhart Law Office, P.C., a corporation owned by Plaintiff, located at 430 South Main Street, North Syracuse, New York 13212, County of Onondaga, which is also a parcel of real property, again owned by Plaintiff with this unlawful *ex parte* Order. The Plaintiff was not present at this location at the time that Defendant arrived. However, Defendants herein entered Plaintiff's business on Plaintiff's parcel of private property having no business matter to address with this business at the time of entry. At this time the Defendants did not possess any warrants for the arrest of Plaintiff, nor did they possess any warrants for entry onto this parcel of private real property or entry into this private business and they also did not possess any warrants to seize any person or property from this business at the time of their entry. Defendant Alexander and Jane Doe, dressed in full Onondaga County Sheriff Office uniforms, entered this establishment

and demanded to know whether Plaintiff was on scene and were advised that Plaintiff was not present at the property. Defendant Alexander and Jane Doe demanded to know when Plaintiff would return. Defendant Alexander and Jane Doe then uninvited entered a private office within Plaintiff's business at Plaintiff's real property which contained private confidential client files, records and information and required Plaintiff's staff to look at Plaintiff's business calendar, which again confidential client information, to determine when Plaintiff would return to this location. While Defendants stood in this private office, they continued to stand over staff; looked around at Plaintiff's private records and documents and look at Plaintiff's calendar. These acts and/or actions caused injury and damages to Plaintiff and Plaintiffs business and subsequently led staff to be uncomfortable to such an extent that they were unable to continue their workday again causing Plaintiff and Plaintiff's business injury and damages due to such actions. The Defendant subsequently left Plaintiff's property.

18.    Upon information and belief, again on the early afternoon of December 6, 2023, at approximately 12:00 pm to 12:15 p.m. Defendant Alexander; Defendant John Doe #1 (an Onondaga County Sheriff Deputy) and Defendant John Doe #2 (an Onondaga County Sheriff Deputy), all dressed in Defendant Onondaga County Sheriff's Office uniforms, arrived at Plaintiff's property in marked vehicles and then entered Plaintiff's business. These Defendant's entered this business and asked for Plaintiff. Instead of waiting for Plaintiff, Defendants, without invitation or any consent, walked down the hallway of this private business and directly entered Plaintiff's personal private office where private confidential client records and information are maintained. The Defendants circled Plaintiff's desk on three sides trapping Plaintiff into a confined space at Plaintiff's desk that is approximately 4' X 3'2" while Plaintiff was in a seated position

and Defendants were standing over Plaintiff. Defendants did not allow Plaintiff to move from that seated position in the confined space. Defendant Alexander then entered that 4' X 3'2" confined space standing over Plaintiff, causing Plaintiff extreme discomfort, distress and anxiety. Defendant Alexander stated she had to serve Plaintiff. At which time Defendant Alexander, while standing over Plaintiff in this confined space, pulled a white piece of paper from a file folder in her hand and handed it to Plaintiff while still blocking Plaintiff from exiting this confined space and standing over Plaintiff. These actions by Defendant Alexander caused Plaintiff fear, distress, anxiety and discomfort and caused Plaintiffs emotional support animal distress as the animal began to growl at Defendant Alexander standing between Plaintiff and Defendant Alexander.

19.    While Plaintiff attempted to look at the document that Defendant Alexander had just handed to Plaintiff, Defendant Alexander, still while standing over Plaintiff in the confined space and with the two other Defendants standing on the opposite side of the desk, began demanding that the Plaintiff turn over her pistol permit to the Defendants and demanding Defendants firearms. Plaintiff felt significant anxiety and stress and asked to have the briefcase sitting on the floor just outside of Plaintiff's reach being blocked by Defendant Alexander. Defendant Alexander continued to stand over Plaintiff and demanded to know if there were any guns in the bag and after Plaintiff stated several times there was not Defendant Alexander finally allowed Plaintiff to move from a seated position to standing position within that confined space to obtain Plaintiff's wallet from the bag on the floor just outside the square of confined space, however, all three Defendants moved closer to Plaintiff and continued to surround the Plaintiff in the Plaintiff's private office. Plaintiff retrieved the wallet from the bag and removed the pistol permit from the wallet, photocopied it and handed it to Defendant Alexander. Defendant Alexander then began demanding

–13–

Plaintiff's firearms. Plaintiff advised Defendant Alexander that Plaintiff did not possess any of the firearms at that location as she had just returned from Court proceedings in a different county and did not have them as they were in a locked box at Plaintiff's residence in Oswego County. After receiving this information, Defendant Alexander then exited the Plaintiff's private office and turned right walking down the hall to the front of the building inside the business. Prior to exiting the Plaintiff's private office Defendant Alexander directed Defendant John Doe #1 and Defendant John Doe #2, both road patrol deputies, to remain in the Plaintiff's private office. Defendants John Doe #1 and Defendant John Doe #2 did remain standing around the Plaintiff's desk and blocked the exit of this office so that the Plaintiff was not free to leave this confined space. At that time both of these Defendants identified that Defendant Alexander was "in charge" and were just doing what they were told to do and apologized to the Plaintiff although continuing to remain in close proximity to Plaintiff and confining Plaintiff to the seated area behind the Plaintiffs desk. All of these actions caused Plaintiff stress, anxiety, distress and indicated to Plaintiff she was not free to leave or move. The two Defendant John Does continued to watch the Plaintiff the entire time. Plaintiff reviewed the document that was served and upon doing so noticed an imminent problem with the Order. Plaintiff requested office staff to enter the private office although the Defendant's blocked the employee from coming to Plaintiff. Plaintiff directed the staff to contact the Judge's chambers who issued the order and to get the law clerk on the telephone. Staff immediately contacted the Court and chambers. Thereafter, Deputy Alexander threatened the Plaintiff that she should cease utilization of these legal mechanisms or things would become much worse for the Plaintiff causing the Plaintiff to be intimidated and afraid and denying Plaintiff's right to actual notice of the allegations and lawful due process as notice and an immediate opportunity to be heard

is required. Plaintiff has continued to be denied due process through the present date in these matters for this specific issue and Plaintiff's property has not been returned, nor has her permit been reinstated even though the matters in Oswego County were dismissed and sealed and all orders resulting therefrom were dismissed, vacated and sealed.

20.     Defendant Alexander could be heard at the front of the office on her cellular telephone with an unknown third party or third parties, although Plaintiff could not make out the words being said, while Plaintiff continued to be confined to her office by the two remaining male deputies as set forth herein. At that time when Defendant Alexander walked to the front of the business Plaintiff's client was seated in the front waiting area where Defendant Alexander remained standing and on the telephone. This caused the Plaintiff's Client discomfort and distress and to question whether it was okay for her to be present while law enforcement was in the office, interfering with Plaintiff's contract with this client and also interfering with Plaintiff's engaging in her lawful business. During this same time Plaintiff was also denied the ability to meet with this Client or prepare for the imminent hearing that was scheduled to start virtually at 1:00 p.m. which again was interference with a contractual relationship and prevented Plaintiff from engaging in her business and profession even though there was required work to complete prior to commencing the hearing.

21.     After Defendant Alexander completed the telephone call inside the front entrance of these offices she then without invitation or consent walked back down the hall to this private business back to Plaintiff's private office and again without consent or invitation reentered Plaintiff's private office. She resumed her position standing over Plaintiff in a confined space and advised Plaintiff to cease having her staff contact the Court or chambers or Plaintiff was going to have bigger problems. Feeling threatened, intimidated and distressed by these statements Plaintiff

directed the staff to stop calling chambers and to immediately call one of the other Attorneys in the office. At that time, Defendant Alexander again stood over Plaintiff with the other two Defendant deputies standing side by side blocking any exit and keeping Plaintiff in this confined space. Defendant Alexander again demanded Plaintiffs firearms be turned over to her. Plaintiff again advised all three Defendant's she did not have any of her firearms in her possession at that time and that they were all locked up at her residence in Oswego.

22.    At that time, Defendant Alexander then demanded that Plaintiff contact her husband, who does not have a gun permit, and have him go to the residence to get the firearms to deliver to Defendant Alexander. Plaintiff indicated she would not do that for several reasons including, but not limited to, the fact that he did not possess a permit to handle the firearms, did not have a key to access the firearms, did not live in the home any longer. Plaintiff advised that her brother not only had a carry permit, but a dealer license, and requested that he be permitted to retrieve the firearms from Plaintiff's home, which Defendant Alexander refused. Plaintiff advised Defendant Alexander she was unable to leave the office or the client because she was trial ordered to commence a Trial at 1:00 p.m. At that times thereafter all three (3) Defendants continued to stand over the Plaintiff and blocked the only source of ingress and egress from that private office preventing Plaintiff from leaving the same or leaving the confines of the area behind Plaintiff's desk.

23.    Because the Plaintiff had a trial that was imminently about to start the office staff entered the private office to obtain documents necessary for them to scan and upload for the virtual hearing. They had to weave in and out of the officers to obtain the documents from Plaintiff and to return them to the Plaintiff. Defendants still refused to move or leave the Plaintiff's personal office and

kept Plaintiff in the confined space causing Plaintiff significant stress and anxiety as the Client's hearing was imminently approaching. Plaintiff finally demanded that they exit the private office so that Plaintiff could meet with the Client regarding the confidential information in the Client's file and to prepare for the hearing as it was almost time to log into the virtual hearing. Defendants were highly uncooperative with this request but did finally exit the Plaintiff's office once the client entered the office, however, Defendant Alexander continued to stand immediately outside of the closed door to Plaintiff's office. Defendant Alexander was observed by staff to send the two male Defendant deputies away and then Defendant Alexander stood outside Plaintiff's closed office door so close that she could hear the confidential and privileged communications between Plaintiff and Plaintiff's client within the closed office. Defendant Alexander remained outside that closed door listening for a significant amount of time even though she was placed on notice before exiting Plaintiff's office of the attorney client relationship and the confidentiality of the same, interfering with Plaintiff's contractual relationship with this Client.

24.    Defendant Alexander then remained in the Plaintiff's office waiting room and spoke with staff and various clients, including the client who's hearing was being held, causing everyone including Plaintiff to be uncomfortable, stressed and anxious and interfering with Plaintiff's contractual relationships and prospective contractual relationships by virtue of Plaintiff's business, as well as in violation of Plaintiff's Constitutional, civil, statutory, and common law rights as well as in violation of the Defendant Onondaga County and Defendant Onondaga County Sheriff's Office policies and procedures pertaining to civil matters which caused Plaintiff harm and injury resulting in significant damages.

25.    Defendants entered this premises on a civil matter and took Plaintiff into custody without

any Miranda warnings, without any arrest warrants and without any warrants for search or seizure of any person or property in violation of Federal and State Law as well as in violation of various rights of the Plaintiff and procedures of the agency. This was a civil matter, yet the Plaintiff was treated at all times herein as an arrested individual at this property located at 430 South Main Street, North Syracuse, New York, County of Onondaga. Defendant Alexander made it clear to the Plaintiff, as well as the Plaintiff's employees, that the Plaintiff was not free to leave or move about at any time set forth herein. In fact, this confinement by Defendants to such a degree that Plaintiff was not even permitted to use the bathroom without the consent and permission of Defendant Alexander. Plaintiff was caused significant distress, discomfort and began manifesting physical symptoms from such stress caused the Defendants as set forth herein. These actions further caused the staff of Plaintiff's law firm "Lockhart Law Office P.C." to become highly uncomfortable, agitated and distressed impacting their ability to handle and maintain Plaintiff's client matters or perform their work duties which again caused harm and injury to the Plaintiff and also interfered with Plaintiff's contractual duties and relationships with clients.

26.    On December 6, 2023, Defendant Alexander remained at the Plaintiff's place of business until approximately 3:45 p.m. or 4:00 p.m. making it clear to Plaintiff that Plaintiff was in her custody and not free to leave at any time from the time she entered this establishment as set forth herein through this time. Defendant Alexander caused Plaintiff to be unable to get Plaintiff's child from school and he was stranded at school. Defendant Alexander then called for "back-up" and Defendant Jane Doe #2 arrived at Plaintiff's business. Defendant Alexander then forced Plaintiff to enter Plaintiff's vehicle and drive to Plaintiff's home. During this drive Defendant Alexander and Defendant Jane Doe #2 still had Plaintiff in custody, making it clear to Plaintiff that they were

following Plaintiff, and that Plaintiff was not to deviate from the route to Plaintiff's home in Oswego County. Defendant Alexander in fact forced Plaintiff to stop and wait in a parking lot off Route 264 in Oswego County as Defendant Alexander had "lost" Defendant Jane Doe #2. Upon arrival at the Plaintiff's home Plaintiff was not free to exit Plaintiff's vehicle freely and had to wait until each of the Defendants were around Plaintiff and then Defendant Alexander entered Plaintiff's home, located at 1790 Count Route 1, Oswego, New York, County of Oswego, without invitation and without the consent of the Plaintiff. Upon entering Plaintiff's home Defendant Alexander and Defendant Jane Doe #2 forced Plaintiff into the home and demanded Plaintiff's firearms. Defendant Alexander then let an unknown John Doe from the Oswego County Sheriff's Office as well as a John Doe from the New York State Police into Plaintiff's home, again without Plaintiff's invitation or consent. Defendant Alexander and John Doe New York State Trooper then forced Plaintiff to enter her bedroom, forced Plaintiff to hand over the lockbox containing the Plaintiffs properly registered and licensed handguns and forced Plaintiff to give them the key to the lockbox. Defendants then could not get the key to work so they forced the box open and removed all of the Plaintiff's firearms without the consent of the Plaintiff. Defendant Alexander then forced the Plaintiff to sign a document with the names and identification numbers of each firearm taken and forced the Plaintiff to sign a second statement that she had turned them over, when in fact they had been taken Defendants. During all of these interactions at the Plaintiff's residence it was clear that the Plaintiff was in custody and not free to move about, it was also clear that the Plaintiff had not consented to Defendants entry into her home, nor invited them into the home. Defendant Alexander then made the comment thanks for being cooperative to which Plaintiff responded that it was not like she had a choice since she had been in custody. The four

offices continued to stand around the Plaintiff in the kitchen of Plaintiffs home until Defendant Alexander finished her paperwork then they all exited Plaintiffs home. Plaintiff subsequently discovered that prior to Plaintiffs arrival at the home Defendant Jane Doe #2 and John Doe from the Oswego Sheriff's Office had forced a friend of Plaintiffs outside of the home and would not permit his reentry into the home until after all officers set forth herein vacated the premises.   All of this caused Plaintiff severe stress, anxiety, physical symptoms and damages. Again, Defendants herein had no warrants and no basis by which to enter the Plaintiff's home or take possession of the Plaintiffs firearms, nor did the Plaintiff consent or invite them into her home.

27.    At some point between December 4, 2023, and continuing through at least December 12, 2023, Defendant individually and/or acting together disclosed all of this information publicly to damage and/or harm the reputation of Plaintiff, a prominent local attorney, known to speak out about corruption and pursue civil actions on behalf of clients related to statutory and constitutional violations of rights. As early as December 4, 2023, Defendants commenced making false allegations about the Plaintiff to cause harm to Plaintiff's reputation. More specifically Defendant's stated that Plaintiff had threatened the life of a Judge which they knew, or had reason to know was false, they further stated that Plaintiff was being arrested for threating a judge, which again they knew, or had reason to know, was false; they stated that the Plaintiff was a risk to herself, challenging the Plaintiff's mental health, which again they knew, or had reason to know, was false; the stated Plaintiff was a risk to others, which again they knew, or had reason to know, was also false and was manufactured in concert with others to cause harm to the reputation of the Plaintiff and done in an effort to deprive the Plaintiff of her constitutional and statutory rights, her contractual rights, harm her reputation and in fact did harm Plaintiff's reputation and caused

Plaintiff harm and injury and significant economic and non-economic damages, which have continued to the present date. Since such actions were done publicly against the Plaintiff and the harm has resulted it is irreparable. Such statements had further continued into at least the first week of January of 2024 and the resulting order from Defendants *ex parte* application, which they have continued to conceal, remains a continuing statement by Defendants as set forth herein and they are continuing to make these claims and never have recanted or withdrawn the same even though they knew, or had reason to know, they were false, and have continued to cause the Plaintiff harm and injury and resulting damages.

28.    On or about December 8, 2023, the Defendants herein acting in concert with unknown third parties, caused an Extreme Risk Protection Order to be filed in the Oswego County Supreme Court by Mark Moody, the then acting District Attorney, which the Plaintiff did not discover until December 13, 2023.

29.    On or about December 11, 2023, Defendant Alexander returned to Plaintiff's business again and attempted to enter Plaintiff's private real property where her business is located. She parked her Department issue vehicle in the parking lot, where she parked along the side of the building, not in a parking space, disrupting traffic for both businesses located at this property. Defendant Alexander attempted entry to Plaintiff's business, however, the doors were locked, so Defendant Alexander could not enter the premises. Defendant Alexander then approached a client of Plaintiff's business in the parking lot by walking up to his vehicle and began harassing this client of Plaintiff's business demanding to know where everyone was and if they were locked inside. Defendant Alexander remained at the Plaintiff's property for a substantial period of time.

30.    On or about December 12, 2023, Defendant Alexander then met with Plaintiff's attorney

and gave him additional paperwork, which included the Temporary Extreme Risk Protection Order filed and entered in the Oswego County Supreme Court, which was prompted by the Defendants herein acting in concert with unknown parties at this time. This application for an Extreme Risk Protection Order was dismissed on the day of the Plaintiff's Trial, December 6, 2024; and an order sealing the same was filed and entered by the Supreme Court Oswego County on February 26, 2025.

31.    Upon information and belief, since on or about January 16, 2024, the Defendants were on notice that certain information contained within the "Memorandum" issued on or about December 4, 2023, contained information that was "not true" as admitted at the Appellate Division by the parties there and yet they continued to act in concert with third parties to engage in the acts and/or actions complained of herein to the present date causing Plaintiff damages as outlined herein.

32.    Defendants have continued their actions to the present date and their applications and resulting order remain in place and again those applications by Defendants have never been supplied to Plaintiff to date, although demanded. There are additional Jane and John Doe Defendants involved here but they have yet to be identified and this Claim will be supplemented as they are identified.    Defendants remain in possession of the Plaintiff's personal property including, but not limited to, three (3) handguns totaling in excess of $10,000.00, one of which is an antique and has significant sentimental value to the Plaintiff and therefore is invaluable to the Plaintiff.

33.    Said conduct caused the Plaintiff emotional and psychological harm resulting in the Plaintiff severe emotional distress, harm and injury as well as economic damages, harm to reputation and name and damage to Plaintiff's business and interfered with current business as

well as prospective business resulting in substantial financial and economic harm to the Plaintiff as outlined herein.

## AS AND FOR A FIRST CAUSE OF ACTION § 1983

34.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 33 above.

35.    Upon information and belief, Defendants law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of justice engaged in the unlawful detaining of the Plaintiff's person and conducted an unlawful search and seizure as outlined herein depriving the Plaintiff of her property by entering her home without a warrant and conducting an unlawful search while continuing to have Plaintiff in custody in a civil matter as outlined herein without authority to do so.

36.    Said conduct caused harm to Plaintiff damaging her.

## AS AND FOR A SECOND CAUSE OF ACTION § 1983

37.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 36 above.

38.    Upon information and belief, Defendants law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of justice engaged in the conduct complained of herein which was caused by Defendants failure to train or supervise their employees adequately.

39.    Said conduct caused harm to Plaintiff damaging her.

## AS AND FOR A THIRD CAUSE OF ACTION § 1983

40.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

39 above.

41.    Upon information and belief, Defendants actions complained of herein denied the Plaintiff

procedural and substantive due process.

42.    Said conduct caused harm to Plaintiff damaging her.

## AS AND FOR A FOURTH CAUSE OF ACTION
## CONSPIRACY AGAINST RIGHTS

43.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

42 above.

44.    Upon information and belief, Defendants conspired to injure, oppress, threaten or

intimidate the Plaintiff's free exercise or enjoyment of the Plaintiff's rights and privilege secured

to her by the Constitution or the Laws of the United States or the State of New York by interfering

with the Plaintiff's lawful right to bear arms and maintain such property in her possession.

45.    Said conduct caused harm to Plaintiff damaging her.

## AS AND FOR A FIFTH CAUSE OF ACTION
## PATTERN AND PRACTICE

46.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

45 above.

47.    Upon information and belief, Defendants engage in a pattern and practice of conduct by

law enforcement officers or by officials or employees of any governmental agency with

responsibility for the administration of justice that deprives persons of rights, privileges, or

immunities secured or protected by the Constitution or laws of the United States and/or the State

of New York.

48.    Said conduct caused harm to the Plaintiff damaging her.

## AS AND FOR A SIXTH CAUSE OF ACTION
## ABUSE OF PROCESS

49.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 48 above.

50.     Upon information and belief, suspension of a pistol permit orders are a regularly issued process that are capable of being abused.

51.     Upon information and belief, the Defendants' filing of the for the suspension of the Plaintiff's pistol permit was designed to serve an ulterior motive here, that is, to further their efforts of wreaking havoc on the Plaintiff's life, business and to place the Plaintiff in imminent risk of harm, injury or death as the result of Defendants actual knowledge of the basis by which Plaintiff obtained her concealed carry permit which was contained within Defendants records at the time of all acts complained of here.

Plaintiff mother would voluntarily give up her rights to her children even

52.     Said actions caused harm to Plaintiff damaging her.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## UNLAWFUL IMPRISONMENT

53.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52 above.

54.     Upon information and belief, the Defendants intended to confine the Plaintiff, Plaintiff was aware she was confined and Plaintiff at no time consented to such confinement by Defendants, such confinement continued in excess of six (6) hours as outlined herein first in Onondaga County, then crossing county lines into Oswego County, depriving the Plaintiff of her rights and freedoms as outlined herein in detail.

55.     Defendants tortiously breached this duty, legally and proximately causing damage to Plaintiff.

56.     Said conduct caused the Plaintiff harm.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**

57.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 56 above.

58.     Upon information and belief, the Defendants had a fiduciary duty to Plaintiff to protect the Plaintiff from unlawful acts in violation of the penal law; to not unlawfully interfere with the Plaintiff's second amendment rights to bear arms through a lawful permit to carry concealed and to preserve that lawful permit under their jurisdiction absent some compelling lawful reason to remove the same.

59.     Defendants tortiously breached this duty, legally and proximately causing damage to Plaintiff.

60.     Said conduct caused the Plaintiff harm.

**AS AND FOR A NINTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH CONTRACT AND/OR**
**PROSPECTIVE CONTRACT**

61.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 60 above.

62.     Upon information and belief, Defendants actions complained of herein resulted in tortious interference with contract under New York law, Plaintiff had valid contracts of representation with various third parties the and defendants had knowledge of the existence of such contract based upon the Plaintiff's position of employment and the open notice of the same; defendant's

intentional and extremely public actions complained of herein procured these third-party's breach of those contract without justification, there was actual breach of the contract, and Plaintiff had economic damages resulting therefrom as the result of the actions complained of herein. Furthermore, for all of the reasons set forth herein Defendants conduct and actions, which are continuing and ongoing, complained of herein, have further interfered with Plaintiff's prospective contracts for the reasons set forth herein.

63.    Said conduct caused the Plaintiff harm.

**AS AND FOR A TENTH CAUSE OF
ACTION FOR NEGLIGENCE**

64.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 63 above.

65.    Defendants had a duty to Plaintiff to protect her.

66.    Defendants negligently breached that duty, legally and proximately harming her.

67.    Said conduct caused the Plaintiff harm.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION
GROSS NEGLIGENCE**

68.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 67 above.

69.    Defendants had a duty to Plaintiff to protect her.

70.    Defendants' actions and omissions were so outside the standard of care and a striking departure from what a reasonable person would do under the circumstances as to constitute gross negligence.

71.    Said conduct caused the Plaintiff harm.

## AS AND FOR AN TWELFTH CAUSE OF ACTION
### DEFAMATION

72.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

71 above.

73.    Defendants made statements that were false, about the Plaintiff herein, these statements

were published without authorization; and such statements caused injury to the plaintiff's

reputation

74.    Said conduct caused the Plaintiff harm.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### INFLICTION OF EMOTIONAL DISTRESS

75.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

74 above.

76.    Defendants inflicted extreme emotional distress upon Plaintiff.

77.    Defendants did so intentionally and/or recklessly and/or negligently, proximately and

legally causing harm to Plaintiff.

78.    Said conduct caused the Plaintiff harm.

## AS AND FOR A FOURTEENT THROUGH EIGHTEENTH CAUSES OF ACTION
### IN VIOLATION OF THE NEW YORK STATE CONSTITUTION

79.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

78 above.

80.    Upon information and belief, the Defendants' actions complained of herein violated and/or

interfered with the Plaintiff rights under the New York State Constitution infringing upon the

Plaintiff's rights and privileges; freedom of speech; equal protection under the law and security

against unreasonable searches, seizures and interceptions causing harm to the Plaintiff as outlined

in detail herein.

81.    Said conduct caused the Plaintiff harm.

**AS AND FOR A NINTEENTH AND TWENTIETH CAUSES OF ACTION
IN VIOLATION OF THE NEW YORK STATE CIVIL RIGHTS LAWS**

82.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 81 above.

83.    Upon information and belief, Defendants law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of justice and to enforce the laws of this State, including the civil rights laws, but failed to do so for the reasons set forth herein, thereby causing the Plaintiff harm as outlined herein.

84.    Said conduct caused the Plaintiff harm.

**AS AND FOR THE TWENTY-FIRST CAUSE OF ACTION
PRIMA FACIE TORT**

85.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 84 above.

86.    Upon information and belief, Defendants otherwise lawful conduct complained of herein was done with the intent to harm the Plaintiff, it was without justification and the Defendants sole motive was malevolence thereby causing the Plaintiff to sustain special damages as outlined herein.

87.    Said conduct caused the Plaintiff harm.

AS AND FOR THE TWENTY-SECOND CAUSE OF ACTION
PRIMA FACIE TORT

88.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 87 above.

89.    Upon information and belief, Defendants with recklessness and/or intent left their jurisdiction to enter another jurisdiction, i.e. Oswego County, to enter Plaintiff's land and property, that was possessed by Plaintiff without the right or permission of the Plaintiff to enter that property and in violation of the Plaintiff's right to exclude the Defendants from her property, and this caused harm to the Plaintiff.

90.    Said conduct caused the Plaintiff harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following:

a.    Compensatory and punitive damages in a sum no less than $22,500,000.00;

b.    Attorneys' fees, costs and disbursements;

c.    A public apology;

d.    Return of Plaintiff's personal property; and/or compensation for any damage or destruction to such personal property of the Plaintiff;

e.    Sealing of all documents relating to the actions of the Defendants as outlined herein;

f.    The following injunctive relief:

1.    Restraining the Defendants from engaging in further unconstitutional and unlawful treatment of her and others similarly situated;

2.    Require the Defendants to review and correct all unconstitutional, discriminatory and retaliatory treatment and conduct within the Defendant County of Onondaga's "Onondaga County Sheriff's Office";

3.    Mandate training and educational programs for employees about constitutional requirements and permissible practices;

4.      Require the Defendants to initiate disciplinary and/or removal proceedings against the individual Defendants herein and all other employees who refuse to conform their behavior and conduct to constitutional requirements and permissible practices; and

5.      Require annual reports demonstrating efforts and success at compliance with the foregoing.

g.      Such other and further relief the Court deems just and proper.

Dated: March 11, 2025

Frank Policelli, Esq.
Attorney for Plaintiff
10 Steuben Park
Utica, New York 13501-2924
Telephone: (315) 793-0020
Email: policellilaw@gmail.com

## VERIFICATION

STATE OF NEW YORK    )
                              ) SS.:
COUNTY OF ONONDAGA )

       Beth A. Lockhart, being duly sworn, deposes and says: that she is the Plaintiff in this action and that the foregoing Complaint is true to her own knowledge, except as to matters therein stated to be alleged upon information and belief and as to those matters, she believes it to be true.

                                                                    Beth A. Lockhart – Plaintiff

Sworn to before me this
11th day of March 2025

Notary Public

Alexis Ashby
Notary Public, State of New York
No. 01AS0027609
Qualified in Onondaga County
Commission Expires Aug. 6, 2028

–31–